## SETTLEMENT AND RELEASE AGREEMENT

This settlement agreement is voluntarily made and entered into as of the date of the final signature to be applied below, by and between Jerry McCutcheon (hereinafter referred to as "Plaintiff") and Gritten Wrecker Service, LLC and Todd Robinson ("Defendants") in *Jerry McCutcheon et al. v. Gritten Wrecker Service, LLC and Todd Robinson.*, Civil Action No. 5:18-cv-247, pending in the United States District Court for the Western District of Texas, Waco Division (hereinafter referred to as the "Lawsuit"). Plaintiff and Defendants (hereinafter referred to collectively as the "Parties"), by and through their undersigned counsel, hereby agree as follows:

1. Bona fide disputes and controversies exist between the Parties, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies, the Plaintiff, on the one hand, and Defendants, on the other hand, desire to compromise and settle fully and finally release, by the execution of this Settlement and Release Agreement (hereinafter referred to as the "Settlement Agreement"), all claims and causes of action in consideration of the Settlement Amount and the other consideration expressed in this Settlement Agreement, the receipt of which and the sufficiency of which Plaintiff hereby expressly acknowledges, and on behalf of his agents, to the maximum extent allowed by law, Plaintiff releases, acquits, and forever discharges Defendants and all of their related entities, owners, parents, subsidiaries, divisions, current and former employees, attorneys, agents, insurers, assigns, heirs, representatives, board members, directors, officers, partners, investors, and shareholders and all of their predecessors, successors, and affiliates (collectively "Released Parties") of and from any and all past, present or future claims, debts, demands, actions, causes of action, suits, sums of money, contracts, agreements, judgments and liabilities whatsoever and of whatever nature, both in law and in equity, for attorneys' fees, interest, penalty, medical bills, contribution, indemnity, punitive or exemplary damages, and any other damage or claim of any kind or character whatsoever, whether directly or indirectly sustained by Plaintiff, for or by reason of any matter, cause or thing whatsoever

existing as of the date of this Settlement Agreement, whether known or unknown, including, without limitation, all claims that in any way relate to, arise from, or are in any way connected with Plaintiff's employment by Defendants, or the allegations made, or which could have been made, by Plaintiff in the Lawsuit ("Released Claims"). Without limiting the foregoing release, it is specifically stipulated and agreed that the Released Claims include, and the payment of the Settlement Amount satisfies, any and all claims of Plaintiff for unpaid wages and overtime, liquidated damages, and attorneys' fees and costs, and satisfies all claims of Plaintiff against the Released Parties existing as of the date of this Settlement Agreement, whether known or unknown. This is intended to be a general release of all claims that may be lawfully released, so, to the extent Plaintiff still possesses any viable claims or causes of action against the Released Parties existing as of the date of this Settlement Agreement, whether known or unknown, Plaintiff hereby releases all such claims to the maximum extent allowed by law.

2. Plaintiff, for himself and for all and each of his assigns, agents, representatives, spouse, heirs, executors and administrators (hereinafter referred to collectively as "Plaintiff"), covenants not to sue, and fully remises, releases and forever discharges Defendants, and all and each of their predecessor and successor firms, parents, subsidiaries, affiliates (collectively, the "Affiliates"), and all and each of the Defendants' and the Affiliates' respective present and former officers, directors, managers, principals, owners, members, partners, shareholders, employees, insurers, plan administrators, attorneys and agents, and all and each of their respective assigns, agents, representatives, spouses, heirs, executors and administrators, of and from any and all actions, causes of actions, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, based on federal, state or local statute, common law, or any other source, whether known or unknown, asserted or not asserted, suspected or unsuspected, which relate in any way or manner to Plaintiff's claims under the FLSA, as well as any and all claims and allegations raised or capable of being raised by

Plaintiff in the pleadings and other materials on file in the Lawsuit. This is a general release of all claims and causes of action of every kind and character related to the Lawsuit and is to be interpreted liberally to effectuate the maximum protection to Defendants.

3. Plaintiff, on behalf of himself, his heirs, affiliates, agents, predecessors in interest, successors, and assigns or other representatives, hereby covenants and agrees not to sue, institute, or cooperate in the institution, commencement, or filing of any suit, administrative proceeding, demand, claim or cause of action against Defendants, their Affiliates, and their respective officers, directors, managers, principals, owners, members, partners, shareholders, employees, insurers, plan administrators, agents, predecessors in interest, successors, attorneys, and assigns or other representatives that are based on, arise out of, or are in any way or manner connected with the causes of action, claims, and controversies arising out of or related to the Lawsuit.

4. In addition to any other waiver or release set out in this Agreement, Plaintiff waives and releases any claims that: (1) he was at any time an owner of a wrecker business affiliated with one or both defendants and (2) is entitled to additional profit sharing from any business affiliated with one or both defendants. As a result, this Settlement Agreement fully and finally resolves (among other things) Defendants' request for a Declaratory Judgment as to such issues.

5. This Settlement Agreement does not constitute an admission by either Party of any violation of any law or statute, and the Parties agree that neither this Settlement Agreement nor the furnishing of consideration will be deemed or construed for any purpose as an admission of liability or wrongful conduct of any kind by either Party. Defendants further assert that they enter into this Agreement in spite of lacking any fault, primarily because of the value they place on never again having to deal with matters arising from Plaintiff's employment relationship with one of them.

6. In consideration for Plaintiff's agreement to finally and fully resolve, settle, release and discharge all claims for unpaid wages and/or overtime under the FLSA or otherwise, and any other

3

agreements made by Plaintiff herein, Defendants agree to pay $4,000.00 (hereinafter referred to as the "Settlement Fund") to be distributed in accordance with the following agreed upon procedure:

a. No later than thirty (30) days after the Settlement Agreement is approved by the Court, or ten (10) days after the expiration of the revocation period described below, whichever is later, Defendants shall mail to Plaintiff's counsel a check made payable to Anderson Alexander, PLLC in the amount of $4,000.00 (four thousand dollars and no cents); no other payment of any kind shall be due.

b. The Parties agree that fifty percent (50%) of Plaintiff's settlement award shall be treated as back wages, and the remaining fifty percent (50%) shall be treated as interest and/or liquidated damages.

c. Defendants shall issue an IRS Form W-2 to Plaintiff for his back-wage portion. The portion allocated to claims for unpaid overtime and other wage-related damages will be subject to all required Plaintiff and employer-paid payroll taxes and deductions. The Parties agree that the employer/Defendants shall pay their taxable liabilities from their own income source and not out of the Settlement Fund. The Parties agree that the Plaintiff's taxes and deductions shall be calculated by Defendants and shall be deducted from the back-wage compensation.

d. Defendants shall issue an IRS Form 1099 to Plaintiff for his liquidated damages amount. This portion allocated to liquidated damages shall be characterized as non-wage income, and Plaintiff will be responsible for any applicable taxes on this portion.

e. As soon as practicable after the Settlement Fund is received by Plaintiff's counsel, Plaintiff agrees to permanently withdraw and dismiss with prejudice his claims in the Lawsuit and execute and file any and all documents necessary to accomplish such withdrawal and dismissal.

4

7. Defendants agree to pay Plaintiff's counsel as full and complete compensation for attorneys' fees, costs, and expenses the sum of $2,000.00, which will be paid from the Settlement Fund. The Parties agree that such sum is full and complete satisfaction of any and all fees, costs, and expenses for which Plaintiff and his counsel may be entitled regarding the Lawsuit, including any fees incurred in the execution of the Settlement Agreement and processing of the payments to be made hereunder after the date of this Settlement Agreement. The amounts set forth in this paragraph of this Settlement Agreement will be the exclusive payment of expenses made by Defendants to Plaintiff.

8. Except as provided in the above-discussion of payroll/withholding taxes, Plaintiff agrees that Defendants have not made any representations regarding the taxability of any payments made pursuant to this Settlement Agreement. Plaintiff agrees and warrants that he has been and remains solely responsible for the timely payment of all taxes, if any, which have been due or which may become due to any governmental authority from receipt of any funds received from Defendants pursuant to this Settlement Agreement. Plaintiff hereby agrees to indemnify, pay the costs of defense, and hold Defendants harmless from and against any and all claims, demands, obligations, and liabilities for such taxes, if any.

9. Notwithstanding any other provision of this Agreement appearing to be to the contrary, the parties are submitting this Agreement for approval by the Court. In the event it is disapproved by the Court, it shall be as if the parties never entered into this Agreement: it shall be null and void and have no binding or precedential effect on any party to it nor as to their attorneys. The parties request that the Court approve the Agreement, given considerations such as that Defendants entirely deny liability; Plaintiff worked for Defendants for less than a year, and that Defendants contend among other things that (a) Plaintiff was "waiting to be engaged" rather than "engaged to be waiting"; (b) Plaintiff independently determined the hours and assignments he would work; (c) Plaintiff was well compensated for the work he did perform; (d) Plaintiff had no substantial

connection to interstate commerce; (e) Plaintiff worked no hours in excess of 40 per week; (f) Plaintiff did no work for one of the Defendants; (g) Defendants were not subject to FLSA coverage as to Plaintiff; and (h) Plaintiff had unclean hands as to his quantum meruit claim. Defendants incorporate by reference here the other assertions as to non-liability from their answer.

10. Plaintiff represents and warrants that: (a) no person other than Plaintiff in this Lawsuit has or has had any claim to any interest in the claims or other matters referred to and/or released in this Settlement Agreement or to any of the sums to be paid hereunder; (b) Plaintiff has the sole right and exclusive authority to execute this Settlement Agreement and accept the sums to be paid pursuant to this Settlement Agreement; (c) Plaintiff has not sold, assigned, transferred, conveyed, or otherwise disposed of any claim or demand covered by this Settlement Agreement; and (d) Plaintiff has not assigned, transferred, conveyed, or otherwise encumbered the sums to be paid pursuant to this Settlement Agreement. In the event that any claim is made against Defendants by Plaintiff based on any claim released herein, or against or for any of the proceeds to be paid hereunder, based in whole or in part on any alleged sale, conveyance, transfer, assignment, lien, or other encumbrance made by Plaintiff, then Plaintiff shall indemnify, pay the costs of defense, and hold Defendants harmless from any such claims.

11. The Parties agree that should a Party to this Settlement Agreement sue another Party to this Settlement Agreement for a breach of any provision of this Settlement Agreement, the prevailing Party shall be entitled to recover its attorneys' fees and costs of court from the other Party. The Parties hereby agree that each Party shall have the right to sue for specific performance of this Settlement Agreement, and declaratory and injunctive relief.

12. One or more waivers of a breach of any covenant, term, or provision of this Settlement Agreement by any Party shall not be construed as a waiver of a subsequent breach of the

6

same covenant, term or provision, nor shall it be considered a waiver of any other then existing, preceding, or subsequent breach of a different covenant, term, or provision.

13.   If any provision of this Settlement Agreement is held to be illegal, invalid, or unenforceable, or is found to be against public policy for any reason, such provision shall be fully severable; and, this Settlement Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never been part of this Settlement Agreement, and the remaining provisions of this Settlement Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision, or by its severance from this Settlement Agreement. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically another provision as similar to the illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

14.   This Settlement Agreement is performable in the State of Texas and shall be governed and construed according to the laws of the State of Texas, excluding its conflicts of law principles and except where preempted by federal law. Venue for any action to enforce the terms of this Settlement Agreement will be properly laid in the state or federal courts of McLennan County, Texas.

15.   Plaintiff specifically acknowledges that he has read and understands this written Settlement Agreement; that Plaintiff is fully competent and authorized to execute this Settlement Agreement and fulfill all of the terms and conditions hereof; that Plaintiff has been advised to consult with an attorney prior to executing this Settlement Agreement and has done so; that Plaintiff is executing this Settlement Agreement voluntarily, without coercion, duress, or undue influence; that Plaintiff is receiving valuable consideration in exchange for his release and waiver of any claim or demand covered by this Settlement Agreement that is in addition to anything of value to which Plaintiff is already entitled; that Plaintiff has not relied upon any representation by Defendants or Defendants' counsel in entering into this Settlement Agreement; and that Plaintiff was given a

reasonable amount of time to execute this Settlement Agreement. Plaintiff further expressly represents and covenants that this Settlement Agreement is the result of an arm's length negotiation in which Plaintiff was represented by legal counsel of their own choice. Plaintiff and Defendants have participated in the preparation of the final draft of this Settlement Agreement.

16. This Settlement Agreement may not be altered or amended except by agreement in writing signed by all Parties hereto. This Settlement Agreement supersedes any and all other representations, discussions, and agreements regarding the subject matter hereof, either oral or in writing, by and between any of the Parties hereto. This Settlement Agreement contains the entire release of the Parties.

17. This Settlement Agreement may be executed in separate counterparts and shall be deemed fully executed when each Party whose signature is required has signed at least one counterpart, even though no one counterpart contains the signatures of all the Parties. Each counterpart shall be deemed an original, and all counterparts shall constitute but one and the same instrument. An electronic, fax, or other copy of a signature hereto will be as effective and as binding as the original of that signature.

18. Plaintiff hereby represents and warrants that he has read this Settlement Agreement and fully understands it to be a final release of all claims, contingent or absolute, against Defendants and **their Affiliates, and their respective officers, directors, managers, principals, owners, members, partners, shareholders, employees, insurers, plan administrators, agents, predecessors in interest, successors, attorneys, and assigns or other representatives** of all claims and causes of action of every kind and character. Plaintiff understands that: (i) the consideration of this Settlement Agreement is the only consideration that Defendants will convey; (ii) he has entered into this Settlement Agreement based on his own knowledge and judgment and on the advice of his attorneys and other advisors of his own free choice; and (iii) he has not acted in reliance

on any representations, advice, or other action of Defendants except as specifically set forth and provided herein.

19. Notwithstanding any other provision of this Agreement appearing to be the contrary: this Settlement Agreement is independent of any issues related to or arising from any investigation or prosecution of Plaintiff for allegations of theft from Defendants' businesses. However, Defendants do waive and release their claims raised, or could have been raised, in the suit against Plaintiff for related civil causes of action, such as but not limited to, conversion and violation of the Texas Theft Liability Act.

20. The waivers and releases in this Agreement also extend to any others that were or could have been raised based on any employment-related cause of action, among which would be ones arising under (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq.; (b) the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, et seq. (the "ADEA"); (c) Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (d) the Equal Pay Act of 1963, 29 U.S.C. § 206; (e) Executive Order 11141; (f) Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.; (g) the Americans With Disabilities Act 42 U.S.C. § 12101, et seq.; (h) the Plaintiff Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. (except for any vested benefits under any tax qualified benefit plan); (i) the Immigration Reform and Control Act, 8 U.S.C. §101, et seq.; (j) the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101, et seq.; (k) the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.; (l) the Sarbanes-Oxley Act of 2002, to the extent permitted by law; (m) Section 885 of the American Jobs Creation Act of 2004 and any applicable guidance thereunder (Internal Revenue Code Section 409A); (n) the Family and Medical Leave Act; (o) wrongful discharge and whistleblower retaliation claims under Texas law; and (p) any other federal, state or local law, rule, regulation, or ordinance; any public policy, contract, tort, or common law; and all claims for vacation, sick, or personal leave pay, short term or long term disability

benefits, or payment pursuant to any practice, plan, policy, handbook, or manual; and any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters. PLAINTIFF'S RELEASES AND WAIVERS EXTEND EVEN TO ANY CLAIMS THAT MIGHT ASSERT INTENTIONAL WRONGDOING, WHETHER BASED ON FRAUD, PHYSICAL HARM, OR OTHERWISE. Plaintiff further expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all claims of which Plaintiff does not know or suspect to exist in Plaintiff's favor at the time of signing this Agreement, and that this Agreement contemplates the extinguishment of any such claim or claims. (It does not waive or release claims that are based on facts arising entirely after Plaintiff signs it.) This Release of Claims does not affect any vested rights Plaintiff may have under any Company savings and investment plan or any 401 (k) or Profit Sharing Plan of the Company. Any such vested rights that Plaintiff may have shall be determined by the terms of such Plans. Plaintiff hereby acknowledges and agrees that Plaintiff shall not seek to recover nor be entitled to recover from any of the Releasees for any claim that has been released in this Release of Claims.

21. Nothing in this Agreement shall be interpreted or applied to affect or limit any lawful right Plaintiff otherwise might have to bring an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or other federal, state, or local administrative agency, or to testify, assist, or participate in any investigation, hearing, or proceeding conducted by the EEOC or other federal, state, or local administrative agency. Plaintiff agrees that Plaintiff has released the Releasees from any and all liability from the laws, statutes, and common law listed above. As such, the Company may assert its rights under the release of claims in this Agreement as a defense to any administrative, judicial or other proceeding or lawsuit filed against the Releasees asserting or alleging any claim, demand or cause of action that has been released or waived above. Further, Plaintiff is not and will not be entitled to any monetary relief resulting from any proceeding brought by Plaintiff or the EEOC or any other person or entity on Plaintiff's behalf (including but not limited to any federal,

state, or local agency) asserting or alleging any claim, demand or cause of action that has been released or waived above. For the avoidance of doubt, nothing in this Agreement shall be interpreted to limit Plaintiff's right to receive an award to which Plaintiff may be entitled for information provided to the U.S. Securities and Exchange Commission (SEC), the U.S. Commodity Futures Trading Commission (CFTC), or equivalent state securities enforcement agencies. Additionally, pursuant to the federal Defend Trade Secrets Act of 2016 ("DTSA"), Plaintiff is hereby notified that an individual may not be held criminally or civilly liable under any Federal or State trade secret law that (A) is made (i) in confidence to a Federal, State or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Plaintiff is further notified under the DTSA that an individual who files a lawsuit for retaliation by an employer or for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the tread secret information in the court proceeding, if the individual: (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order. (b) The parties also acknowledge that nothing in this Agreement shall be interpreted or applied in a manner that affects or limits Plaintiff's otherwise lawful ability to challenge, under the Older Workers Benefit Protection Act ("OWBPA") (29 U.S.C. § 626), the knowing and voluntary nature of his/her release of any claims for violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA") against any of the Releasees before a court, the EEOC, or any other federal, state, or local agency.

22.     **Release of Claims under the ADEA, Right to Review and Revoke.** Plaintiff expressly acknowledges and agrees that this Agreement includes a waiver and release of all claims which Plaintiff has or may have under the ADEA. The following terms and conditions apply to and are part of the waiver and release of claims under this Agreement:

a. The waiver and release of claims contained in this Agreement does not cover rights or claims that may arise after the date on which Plaintiff signs this Agreement.

b. Plaintiff is hereby advised to consult a lawyer before signing this Agreement. Plaintiff is granted at least twenty-one (21) calendar days after Plaintiff is presented with this Agreement to decide whether or not to sign this Agreement. If Plaintiff signs this Agreement before the expiration of the at-least-twenty-one (21) day period, he/she waives the balance of that period. Plaintiff agrees that any modifications made to this Agreement, material or otherwise, do not restart or affect in any manner the consideration period of at least 21 calendar days.

c. Plaintiff will have the right to revoke this Agreement for a period of seven (7) days after signing this Agreement, and this Agreement shall not become effective or enforceable unless and until this revocation period has expired without revocation by Plaintiff. If Plaintiff timely revokes this Agreement, Plaintiff will not receive or be entitled to receive additional payments and benefits described in it.

d. Any revocation by Plaintiff must be in writing and delivered to Defendants' attorney as identified below). It must be delivered before the seventh (7th) day after the date that this Agreement is executed by Plaintiff.

e. Plaintiff hereby acknowledges and agrees that Plaintiff is knowingly and voluntarily waiving and releasing Plaintiff's rights and claims only in exchange for consideration (something of value) in addition to anything of value to which Plaintiff is already entitled.

**AGREED TO BY PLAINTIFF**

Dated: 5-18-18 _____
Jerry McCutcheon, Individually

**VERIFICATION:** On this day appeared before JERRY McCUTCHEON, whose identity was known or proven to me and he did swear or affirm under oath that he understood and agreed to the terms set out in this Settlement Agreement and thus signed it.

**NOTARY SEAL:**

[Seal: BENJAMIN A. DIAZ, Notary Public, STATE OF TEXAS, My Comm. Exp. 11-16-2018]

_____
Signature of Notary

May 18, 2018
Date Signed

Commission Expires: 11-16-2018

**AGREED TO BY DEFENDANTS**

Dated: 5-14-18 _____
Defendant Gritten Wrecker Service

Dated: 5-14-18 _____
Defendant Todd Robinson

13